**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
California Bar No. 330990
scott@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Office: (786) 289-9471
Direct: (305) 975-3320
Fax: (786) 623-0915

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.*
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

**NORMAND PLLC**
Edmand A. Normand*
Jacob L. Phillips*
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Telephone: (407) 603-6031
service@ednormand.com
ed@ednormand.com
jacob@normandpllc.com

**DAPEER LAW, P.A.**
Rachel Dapeer, Esq.*
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Telephone: 305-610-5223
rachel@dapeer.com

*Pro Hac Vice to follow*

Attorneys for Plaintiff and the Proposed Class

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTEN PEREZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GEICO INDEMNITY COMPANY, a foreign insurance company,<br><br>Defendant. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# CLASS ACTION COMPLAINT

Plaintiff Kristen Perez ("Plaintiff"), on behalf of herself and all others similarly situated, files this Class Action Complaint against GEICO Indemnity Company ("GEICO"), and in support thereof states the following:

## INTRODUCTION

1. This is a class action lawsuit brought by Plaintiff, the named insured under a GEICO automobile policy issued for private passenger auto physical damage including comprehensive and collision coverage (the "Policy"). Defendant's Policy promises payment of "Actual Cash Value" ("ACV") in the event of a total loss of an insured vehicle. Pursuant to the terms of the Policy, ACV includes, *inter alia*, State sales tax. GEICO acknowledges that its Policy includes these taxes: as part of its ACV payment to insureds who *own* vehicles that have sustained a total loss, GEICO pays sales tax; and as part of its ACV payment to *all* insureds. However, in violation of its Policy, GEICO refuses to pay sales tax (or, in rare cases, underpays sales tax) when it purports to pay ACV to insureds who have suffered a total loss of their *leased* (as opposed to owned or financed) insured vehicle.

2. Defendant GEICO is one of the largest passenger auto insurance carriers operating in the State of California. One of the coverages GEICO sells to consumers is comprehensive and collision coverage. GEICO systematically and uniformly underpaid Plaintiff and thousands of other putative Class Members amounts owed its insureds who suffered the total loss of a vehicle insured with comprehensive and collision coverage.

3. Pursuant to its standard Policy form language, GEICO is obligated to pay insureds sales tax in making payment to insureds who suffer the total loss of an insured vehicle. The ACV of insured property, including automobiles, is not based on the amount, if any, originally paid by the insured for the total loss vehicle, nor on the amount, if any, paid by the insured to replace the total loss vehicle. Similarly, the amount of sales tax owed is not based on the amount in sales tax, if any, originally paid by the insured for the total loss vehicle, nor on the amount paid, if any, to replace the total loss vehicle; instead, the amount of sales tax owed is based on the underlying adjusted vehicle value of the total loss vehicle *at the time of loss* ("ACV sales tax").

4. This lawsuit is brought by Plaintiff individually and on behalf of all other similarly situated insureds who have suffered damages due to GEICO's practice of refusing to pay full ACV sales tax to first-party total loss insureds on physical damage policies containing comprehensive and collision coverages.

5. The failure to pay ACV sales tax on first-party total losses owed to GEICO insureds pursuant to GEICO's uniform policy language constitutes a breach of the policy.

## THE PARTIES

6. Plaintiff Kristen Perez is domiciled and resides in Monterey County, California, and is a citizen of the State of California.

7. At all times material hereto, GEICO is and was a foreign corporation located in the State of Maryland, incorporated in Maryland and with its principal place of business in Maryland, and authorized to transact insurance in the State of California.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) Plaintiff is a member of the putative class, which consists of at least 100 members, and Plaintiff and Defendant are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the exceptions under § 1332 apply to this claim.

9. Venue is proper in this court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and Defendant is subject to personal jurisdiction in this district.

## INTRADISTRICT ASSIGNMENT

10. Assignment to the San Jose Division is proper under Civil Local Rules 3-2(c) and 3-2(e) because a substantial part of the events giving rise to Plaintiff's claims occurred in Monterey County.

## AMOUNT IN CONTROVERSY

11. GEICO paid out approximately $450 million dollars in auto private passenger physical damage claims in 2018.

12. Upon information and belief and the investigation of their attorneys, including total loss rates per physical damage premiums written by Defendant (and other insurers), during the relevant time period, Defendant adjusted, at minimum, approximately 115,000 total loss claims. Upon information and belief, approximately 10% of such total loss claims were not paid sales tax owed under a given Policy. Assuming an average vehicle value of $15,000 and a sales tax rate of 8.5%, the amount-in-controversy easily exceeds $10,000,000, exclusive of interest, costs, and attorney's fees.

## FACTUAL ALLEGATIONS

### A. The GEICO Policy

13. Defendant GEICO's policy language as to comprehensive and collision coverage for ACV of total loss vehicles is standardized and is present in GEICO auto policies issued by Defendant in California. Indeed, Plaintiff and all putative Class members were insured under a standard, form policy that includes identical material language. The Policy under which Plaintiff was insured, which is materially identical to the Policy under which all putative Class members were insured, is affixed hereto as Exhibit A.[1]

14. In Section III of the Policy, entitled "PHYSICAL DAMAGES COVERAGES", GEICO states that it: "will pay for *collision loss* to the *owned auto* or *non-owned auto* for the amount of each *loss* less the applicable deductible." Policy at 8 (emphasis in original).[2]

15. The Policy also states that GEICO "will pay for each *loss*, less the applicable deductible, caused other than by *collision* to the *owned* or *non-owned auto*." *Id*.

16. "Collision" is defined as "*loss* caused by the upset of the covered auto or its collision with another object[.]" *Id*. at 7.

17. "Owned auto" is defined as, *inter alia*, any vehicle "for which a specific premium charge indicates there is coverage." *Id*. at 8.

---

[1] GEICO uses two Policy Forms in the State of California – Form A-30CA and A-70CA. Plaintiff was insured under the A-30CA, which is affixed as Exhibit A. The A-70CA Form is materially identical as it pertains to the Physical Damages Coverages relevant herein and all relevant definitions.

[2] Unless otherwise indicated, the emphasis within the quotations of Plaintiff's Complaint are in the Policy.

-3-

CLASS ACTION COMPLAINT

18. "Loss" is defined as "direct and accidental loss of or damage to" the insured auto. *Id*. at 7.

19. The limit of liability is established as, *inter alia*, "the **actual cash value** of the property at the time of the **loss**." *Id*. at 9.

20. "Actual cash value" is defined as "the replacement cost of the auto or property less **depreciation** or **betterment**." *Id*. at 7. The ACV of the vehicle, the Policy continues, "will be determined at the time of **loss** and will include an adjustment for **depreciation/betterment** of the property." *Id*. at 9.

21. There is no difference, for purposes of Defendant's duty to pay ACV on a first-party total loss claim, between a collision total loss claim and a comprehensive total loss claim. *See generally id*.

22. There is no difference and no distinction in the Policy between owned, financed, and leased vehicles. In fact, the Policy specifically asserts not only that "owned auto" includes *any* auto for which a premium is paid—even if financed or leased—but also that owned autos *include* autos leased for a period of over six months. *Id*. at 8.

23. Clearly, then, the policy language does not further define ACV as including, for example: (1) any provision excluding sales tax from ACV; (2) any provision deferring payment of the ACV sales tax for any purpose whatsoever; (3) any provision requiring an insured to obtain a replacement vehicle at all; or (4) any provision linking the amount of ACV sales tax to amounts originally paid for the total loss vehicle or amounts actually incurred in replacing the total loss vehicle. Instead, the Policy establishes ACV as a *predictable amount* upon which both GEICO and the insured can rely.

24. The ACV of the insured vehicle is an independent amount. The ACV is the same whether the insured paid nothing for the total loss vehicle, paid less than what the vehicle was worth, or paid more than what the vehicle was worth. The ACV is the same whether the insured replaces the vehicle with a more expensive vehicle, a less expensive vehicle, or chooses not to replace the vehicle at all.

25. The policy language applies to all covered autos irrespective of ownership interests—whether owned, financed or leased, insured autos are considered "owned" or are treated and defined identically for purposes of the policy.

-4-
CLASS ACTION COMPLAINT

### B. Sales Tax is a Replacement Cost

26. Sales tax is a mandatory cost imposed by the State of California on every vehicle purchase. There is no exception to the imposition of sales tax for insureds replacing a total loss vehicle. It is impossible to replace a total loss vehicle—or to purchase any vehicle under any circumstances—without payment for sales tax.

27. As set forth above, GEICO promises to pay the ACV of an insured vehicle in the event of, *inter alia,* a total loss; and defines ACV as the replacement cost of the insured vehicle, less depreciation. Sales tax is incontrovertibly an element of the replacement cost of the vehicle, and is therefore incontrovertibly an element of the ACV of the insured vehicle.

28. Thus, sales tax is inherently part of the costs to replace an insured property, including a vehicle. *Johnson v. Hartford Cas. Ins. Co.*, 2017 WL 2224828, at *8 (N.D. Cal. May 22, 2017) (citing *Tolar v. Allstate Texas Lloyd's Co.*, 772 F. Supp. 2d 825, 831-32 (N.D. Tex. 2011) (explaining that the "ordinary meaning of replacement costs" in the context of ACV is "a composite of all reasonably foreseeable repair or replacement costs, including . . . sales tax"); *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305 (11th Cir. 2008) ("[T]he cost to repair and replace property with new materials would necessarily include the state and local taxes on the materials purchased to make the repairs.")).

### C. GEICO Systematically Fails to Pay Sales Tax if the Total Loss Vehicle Was Leased

29. Under the terms of the Policy, therefore, the ACV of a vehicle is the adjusted vehicle value, *plus sales tax* calculated as a percentage of the adjusted vehicle value. Thus, the amount owed insureds who suffer a total loss is the adjusted vehicle value, plus sales tax calculated as a percentage of the adjusted vehicle value, less any applicable deductible and salvage retention value.

30. Indeed, in California, GEICO pays full sales tax—the applicable percentage of the adjusted vehicle value—as part of the ACV replacement costs if the total loss vehicle was owned or financed.

31. Such payments constitute an acknowledgement from GEICO that in the event of a total loss, its Policy promises payment of sales tax as part of the ACV of the insured vehicle.

32. Nevertheless, in California, GEICO uniformly does *not* pay the sales tax owed as a part of the ACV replacement costs if the total loss vehicle was leased.[3]

33. GEICO's Policy does not contain any provision or clause stating GEICO will pay only a prorated or partial amount of the costs to replace the insured vehicle. Instead, GEICO simply promises to pay the costs to replace the vehicle. Moreover, by excluding depreciation and actual condition from the costs of replacement, GEICO further indicates that replacement costs *not* excluded would be paid. If GEICO had wanted to exclude all or part of the replacement costs (like depreciation and condition), it could have done so.

34. GEICO's Policy does not distinguish between owned, financed, and leased vehicles; instead, it explicitly treats them the same for purposes of ACV payments. It promises to pay precisely the same amount—replacement costs of the insured vehicle minus depreciation—to every policyholder.[4]

35. GEICO's Policy promises payment of full sales tax as part of the cost to replace the vehicle, without taking into account, for example, what amount, if any, was previously paid for the vehicle, nor what amount, if any, is actually incurred in replacing the vehicle. In fact, if the insured received the vehicle as a gift and, therefore, paid no sales tax at all, the ACV of the insured vehicle, according to the terms of the Policy, is nevertheless unaffected. If the insured *does not replace the total loss vehicle at all*, the ACV of the vehicle is unaffected. GEICO's Policy does not condition payment of ACV on actual replacement. *See generally* Policy.

---

[3] Upon information and belief, GEICO may purport to sometimes partially pay sales tax under some limited factual circumstances. Even in that scenario, however, GEICO would still owe the difference between the partial sales tax payment and the full ACV sales tax owed on the total-loss adjusted vehicle.

[4] These allegations should come as no surprise to Defendant, given that at least one court has already found that similar conduct by GEICO constitutes a breach of contract. Specifically, in *Roth v. Geico General*, the Court cogently held that GEICO's procedure breached its (materially identical) contract by failing to include in an ACV payment taxes and fees: "[A]s sales tax and title transfer fees are mandatory, necessarily included in the replacement costs of a total loss vehicle, the Court concludes that they are components of actual cash value under the Policy and are therefore due to be paid to the insured under the Policy, regardless of whether the vehicle is owned, financed, or leased." *Roth v. GEICO Gen. Ins. Co.*, No. 16-62942-CIV, 2018 WL 3412852, at *4 (S.D. Fla. June 14, 2018), attached as Exhibit D (Order on Summary Judgment). Further, the Court found, "the Policy does not distinguish between the ACV and replacement costs for owned, financed, or leased vehicles, and provides no notice to GEICO's insureds that their leased vehicles will be valued differently." *Id*. at *3.

### D. Plaintiff's Total Loss Claims

36. At all times material hereto, Plaintiff leased and insured a 2018 Honda Clarity Plug-In Hybrid Touring, VIN # JHMZC5F31JC013156.

37. Plaintiff insured the 2018 Honda Clarity Plug-In Hybrid Touring, (the "insured vehicle") under an insurance policy issued by Defendant. Exhibit A (Policy); Exhibit B (Decl. Sheet). Defendant insured Plaintiff's vehicle according to this Policy at all times material hereto.

38. On or about July 22, 2018, Plaintiff was involved in an accident while operating the insured vehicle. As a result of said accident, Plaintiff filed a claim for property damage with Defendant, claim number 037084128-0101-030.

39. Following the filing of said claim, GEICO determined that the adjusted value of the insured vehicle was $36,539.00. Exhibit C (Total Loss Settlement Letter).

40. GEICO added state and local regulatory fees of $385.00, subtracted the deductible of $1,000, but did not include any amount for sales tax. *Id.*

41. GEICO then made a payment to Plaintiff for a total of $35,924.00. *Id.*

42. The applicable sales tax based on Plaintiff's residency was 7.5%. Specifically, Plaintiff was owed sales tax in the amount of 7.25% state sales tax, plus local surtax of 0.25%, of the adjusted vehicle value of her insured vehicle. Thus, the ACV sales tax owed as a part of the ACV of the insured vehicle was $2,769.30.

43. GEICO did not include sales tax in making its (purported) ACV payment to Plaintiff, thereby breaching the terms of Plaintiff's Policy.

44. Sales tax is a mandatory applicable cost that must be paid to replace or purchase any vehicle in the State of California.

45. In breach of its contract with Plaintiff, GEICO did not include any sales tax in making the ACV payment for Plaintiff's total loss.

46. Plaintiff paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the accident. By paying the claim—albeit

insufficiently—GEICO acknowledged that Plaintiff satisfied all conditions precedent required under the Policy.

## CLASS ACTION ALLEGATIONS

47. Plaintiff brings this action seeking representation of a class pursuant to Federal Rule of Civil Procedure 23.

48. Plaintiff brings this action as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

> All individuals insureds under a California policy issued by GEICO Indemnity Company with the same operative policy language covering a leased vehicle with private-passenger auto physical damage coverage with comprehensive or collision coverage, who made a first-party claim, whose claim was determined to be, and adjusted as, a total loss under comprehensive or collision coverage, and where the total loss payment did not include full sales tax calculated as the applicable state and local percentage of the adjusted vehicle value ("ACV Sales Tax") within four years prior to the date on which this lawsuit was filed through the date of any certification order.

49. Certification of the above class is supported by the following considerations:

   a. The relatively small amount of damages that members of the class have suffered on an individual basis would not justify the prosecution of separate lawsuits;
   b. Counsel in this class action are not aware of any previously filed litigation against GEICO in which any of the members of the class is a party and which any question of law or fact in the subject action can be adjudicated; and
   c. No difficulties would be encountered in the management of Plaintiff's claim on a class action basis, because the class is readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

50. Although the precise number of members of the Class are unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff understands Defendant to be one of the largest motor vehicle insurers in the State of California—one that writes hundreds of millions of dollars of physical damage coverage premiums. Thus, the class of persons affected by Defendant's unlawful practice alleged herein consists of thousands of individuals, or the class of persons effected are

otherwise so numerous that joinder of all class members is impractical. The unlawful practice alleged herein is a systematic and uniform practice, employed by Defendant in violation of standardized and uniform insurance policy language, which results in the retention by Defendant of insurance benefits and monies properly owed to Plaintiff and the Class members.

51. The precise number of members of the Class can only be determined through discovery. However, upon information and belief, including investigation by their attorneys and public information concerning the statistical likelihood of total losses per premiums written, Plaintiff believes the Class is comprised of approximately 8,000 members. Numerosity under Rule 23(a)(1) is established.

52. Rule 23(a)(2)'s commonality requirement is also satisfied. The central issues in this litigation turn on the interpretation of materially identical policy provisions; thus, this case is well-suited for class-wide adjudication. Defendant and all members of the Class, including Plaintiff, are bound by materially identical policy terms.

53. As to the Class, common questions include (but are not limited to): (1) whether, under the Defendant's standardized policy language, leased-vehicle insureds are owed sales tax upon the total loss of an insured vehicle; (2) whether the Policy defines and treats leased, financed and owned vehicles in a materially-similar manner; (3) whether GEICO makes the same promise as to leased, financed, and owned vehicles; and (4) whether the ACV of a vehicle depends on whether it is owned, leased or financed.

54. Rule 23(a)(3)'s typicality requirement is satisfied because Plaintiff and members of the Class were injured by Defendant's uniform misconduct. Further, Plaintiff and Class members' legal claims arise from the same core practices: namely, the failure to pay the full ACV of insured vehicles on first-party total loss claims. Plaintiff's claims are based upon the same legal theories as those of the members of the Class. Plaintiff suffered the same harm as all other members of the Class: the coverage for sales tax that Defendant failed to pay or underpaid its leased-vehicle insureds. Plaintiff is not subject to any unique defenses nor does Plaintiff bring any unique claims.

55. The relevant Policy provisions for each Class member are the same. The relevant law relating to the interpretation and application of those Policy provisions for each Class member is the same.

56. Rule 23(b)(3)'s predominance requirement is satisfied. The previously articulated common issues of fact and law predominate over any question solely affecting individual Class members. As to the Class, the critical common question—does Defendant's promise to pay the ACV of the total loss vehicle obligate it to include ACV sales tax to leased-vehicle insureds—is identical for every member of the Class. Other critical common questions, such as whether Defendant's Policy treats or defines leased vehicles differently than owned or financed vehicles, are also identical for every member of the Class.

57. Further, the measure of damages, if any, is the same for every member of the Class, and any variances in damages will reflect only variances in underlying vehicle values (some vehicles are more expensive than others, and thus the applicable ACV sales tax owed will be different), the application of which is a purely ministerial function. Otherwise, there are no individualized questions of fact or law.

58. Further, Rule 23(b)(3)'s superiority requirement is met here: class treatment is superior to any other alternative method of adjudication because the damages suffered by individual members of the Class is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class members to seek individual redress for the wrongs done to them. Even if some members of the Class could afford individual litigation, the court system could not. Thousands of individual cases asserting precisely the same claim that Plaintiff asserts here would be uneconomical and would strain (indeed, likely overwhelm) judicial resources.

59. As to the Class, class treatment is superior because every claim—all based on uniform conduct and a form contract—will be substantially determined by answering the single question of whether Defendant's Policy obligates payment of sales tax. It is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. No difficulty would be encountered in the management of this case that

would preclude its maintenance as a class action. To the contrary, several other similar total loss class actions against other insurers (including Defendant in a different state) were successfully treated as class actions. *See, e.g.*, *Roth v. Geico General*, Exhibit E.

60. Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the Class. Plaintiff possess no conflict with members of the Class. Plaintiff's claim does not conflict with that of any member of the Class, and Plaintiff has no financial or any other interest conflicting with those of the Class. Plaintiff fully intends to vigorously protect the interests of Class members in prosecuting these claims.

61. Plaintiff is committed to the vigorous prosecution of this action and retained competent counsel experienced in prosecuting and defending class actions. Moreover, Plaintiff's counsel has successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include ACV Sales Tax after total losses.

### FIRST CLAIM FOR RELIEF
### BREACH OF CONTRACT FOR FAILURE TO PAY ACV SALES TAX
**(By Plaintiff on Behalf of Plaintiff and the Class)**

62. Plaintiff incorporates by reference paragraphs 1-61 as though fully set forth herein.

63. Plaintiff was party to an insurance contract with Defendant as described herein. All Class members were parties to insurance contracts with Defendant containing materially identical terms.

64. The interpretation of Plaintiff's and all Class members' Policies is governed by California law.

65. Plaintiff and all Class members made a claim determined by Defendant to be a first-party total loss under the insurance policy and determined by Defendant to be a covered claim.

66. Defendant, by paying the total loss claim, determined that Plaintiff and each Class members complied with the terms of his or her insurance contract, and fulfilled all required duties and conditions under the Policy for the insured to be paid on his or her total loss.

67. Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, Plaintiff and every Class member were owed the ACV of the vehicle, which, per the terms of the Policies, includes sales tax calculated as a percentage of the adjusted vehicle value.

68. Defendant refused or otherwise failed to pay ACV Sales Tax as part of its purported ACV payment to Plaintiff and every Class member, following Defendant's determination that a vehicle was a total loss.

69. Defendant's failure to provide payment for the ACV sales tax constitutes a material breach of contract with Plaintiff and every Class member.

70. As a result of said breaches, Plaintiff and the Class members are entitled, under Defendant's insurance Policies, to sums representing the benefits owed for ACV sales tax, as well as costs, pre-judgment and post-judgment interest, injunctive relief and other relief as is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands a trial by jury on all triable issues and seek and pray for relief and judgment as follows:

a. For an Order certifying this action as a Class Action on behalf of the Class described above;

b. For an award of compensatory damages for Plaintiff and members of the Class in amounts owed under the Policies;

c. For all other damages according to proof;

d. For an award of attorney's fees and expenses as appropriate pursuant to applicable law;

e. For pre- and post- judgment interests on any amounts awarded; and

g. For other and further forms of relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED: October 23, 2020.

**EDELSBERG LAW, PA**

By: /s/ Scott Edelsberg
Scott Edelsberg
CA State Bar No. 330990
20900 NE 30th Ave, Suite 417
Aventura, Florida 33180
Telephone: 305-975-3320
scott@edelsberglaw.com

*For Plaintiff and the Putative Class*